**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE LEGACY COMPANIES, LLC,<br>*Plaintiff,*<br>v.<br>REGAL WARE INC.,<br>*Defendant.* | Civil Action No: ______<br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff, The Legacy Companies, LLC ("Plaintiff" or "Legacy"), by and through undersigned counsel, for its Complaint against Defendant Regal Ware, Inc. ("Defendant" or "Regal"), alleges as follows:

**NATURE OF THE ACTION**

1. This action arises under the federal trademark laws of the United States, 15 U.S.C. § 1051 et seq. (the "Lanham Act"), and Delaware common law, seeking relief for trademark infringement, false designation of origin, unfair competition, trademark dilution, and breach of contract, stemming from Regal's unauthorized and willful adoption and use of Legacy's distinctive and federally registered WEST BEND trademarks (the "WEST BEND Marks"). A true and correct copy of WEST BEND Marks' registrations are attached hereto as **Exhibit 1**.

2. Despite knowing of Legacy's trademark rights in the WEST BEND Marks, Regal has willfully infringed these rights by offering goods and services under the WEST BEND Marks as well as in the filing of an unauthorized trademark application attempting to usurp ownership of the WEST BEND Marks and their associated goodwill. Specifically, this infringing use is in connection with the (1) sales and marketing of WEST BEND branded kitchenware and cookware

goods, (2) surreptitious and unauthorized filing of a trademark application for one of Legacy's WEST BEND Marks, and (3) use of the WEST BEND Marks in connection with public trade shows. A copy of select infringing activities by Regal are attached hereto as **Exhibit 2** pgs. 1-4.

3. Furthermore, on information and belief, it appears that Regal intends to continue to expand its infringing use in the near future as evidenced by press releases, advertisements, and tradeshow announcements by Regal. A copy of promotional materials and future business plans by Regal are attached hereto and included in **Exhibit 2** pgs. 5-7.

4. Legacy seeks relief against Regal for numerous causes of action, including (i) federal trademark infringement, in violation of 15 U.S.C. § 1114; (ii) federal trademark counterfeiting, in violation of 15 U.S.C. § 1114; (iii) federal unfair competition and false designation of origin, in violation of 15 U.S.C. § 1125; (iv) federal trademark dilution; (v) statutory trademark dilution under 6 Del. C. § 3301 *et seq.*; (vi) trademark infringement and unfair competition under Delaware common law; and (vii) breach of contract.

5. Legacy seeks preliminary and permanent injunctive relief, monetary damages, disgorgement of Regal's profits, treble damages, attorney's fees, and all other relief deemed just and proper to remedy Regal's willful infringement and prevent further consumer confusion and harm to Legacy's valuable trademark rights.

## THE PARTIES

6. Plaintiff, The Legacy Companies LLC, is a Texas limited liability company with a principal place of business located at 3355 Enterprise Avenue Suite 160, Fort Lauderdale, FL 33331.

7. Upon information and belief, Defendant, Regal Ware, Inc., is a Delaware corporation with a principal place of business located at 11270 W Park Place, Suite 800, Milwaukee, WI 53224.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 (a) and (b) because Legacy asserts claims arising under federal trademark laws, including 15 U.S.C. § 1114 and § 1125(a), and involving matters of unfair competition related to trademark infringement.

9. This Court has supplemental jurisdiction over the claims in this action that arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a), since the state statutory and common law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

10. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant is incorporated in this district and has otherwise established contacts within this State and this district sufficient to permit the exercise of general and specific jurisdiction.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District. For venue purposes, a corporate defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, 28 U.S.C. § 1391(c)(2), and Defendant is incorporated under the laws of the State of Delaware.

## FACTUAL BACKGROUND

### Legacy's Priority Rights in the WEST BEND Marks

12. For more than 100 years, Legacy and its predecessors have served customers in over 130 countries through a well-established network of distributors, dealers, and retail channels.

Further, Legacy has numerous registered trademarks for well-known brands around the world in the cookware and kitchenware industries which include but are not limited to the WEST BEND trademarks. A copy of screenshots of Legacy's WEST BEND Marks and their historical usage is attached hereto as **Exhibit 3**.

13. Legacy is the rightful owner of various trademark registrations and applications including United States Trademark Registration Nos. 1846660, 1437098, 7681233, 635121, 4507110, 6159731, 4978657, 7545963, and 862553 covering various WEST BEND marks (the "WEST BEND Marks") for various goods. *See* **Exhibit 1**.

14. Legacy, through its predecessor, first started using the WEST BEND trademark in commerce in association with electric roasters, electric skillets, electric mixers, and electric water heaters, in the United States at least as early as June 15, 1954. A true and correct copy of Legacy's earliest WEST BEND Mark, United States Patent and Trademark Office ("USPTO") registration number 635,121, is attached hereto as **Exhibit 4**.

15. The WEST BEND Marks are synonymous with Legacy and quality cookware and kitchen solutions. The WEST BEND Marks are used in association with promoting and selling various products including, but not limited to, cookware, air fryers, blenders, bread makers, coffee makers, egg cookers, electric kettles, ice makers, popcorn makers, rice cookers, slow cookers, toasters, freezers, microwaves, and refrigerators. Several screenshots of Legacy's website, WEST BEND online marketplace, and promotional materials are attached hereto as **Exhibit 5**.

16. Except for United States Trademark Registration No. 0862553, the WEST BEND Marks are registered on the Principal Register in the USPTO and Legacy's registration and ownership of the WEST BEND Marks remains active. *See* **Exhibit 1**.

17. Legacy's WEST BEND Marks have obtained secondary meaning in the consumer marketplace. The WEST BEND Marks are widely recognized and have been recognized for decades for high-quality goods. Customers from all over the globe seek out WEST BEND cookware and kitchenware due to its high quality and trusted namesake. True and correct screenshots of examples of Legacy, and its predecessor company's history in the space and the public recognition of the WEST BEND Marks are attached hereto as **Exhibit 6**; *see* also **Exhibit 3**.

18. Legacy's WEST BEND Marks are widely used and recognized on the Internet and on social media. For example, the WEST BEND branded social media accounts reach numerous customers with over 850 Instagram followers, over 27,000 Facebook followers, and over 1,000 YouTube subscribers. True and correct screenshots from WEST BEND's Instagram, Facebook, and YouTube channel are attached hereto as **Exhibit 7**.

19. Customers look to the WEST BEND brand from Legacy for reliable and well-made cookware and kitchen solutions. Over the years, Legacy has developed a strong and loyal customer following for its brands, including the WEST END brand.

20. Legacy promotes and sells its goods related to the WEST BEND brand through its WEST BEND branded website and social media accounts across the United States and around the world. *See* **Exhibits 5 and 7**.

21. Legacy has invested substantial time, effort, and financial resources promoting its WEST BEND Marks in interstate and global commerce by directly marketing and advertising its related goods to potential and existing customers around the world. Legacy has cultivated impressive recognition and substantial goodwill in the WEST BEND Marks, and it has established a reputation for excellence in the quality of its goods sold under the WEST BEND Marks.

22. As a result of these efforts, the efforts of the predecessor companies, and the efforts of the previous owners of the WEST BEND brand, Legacy has obtained consumer recognition of its distinctive WEST BEND Marks used in connection with its goods. The WEST BEND Marks and the goodwill associated therewith have become one of Legacy's most valuable assets.

**Acquisition and Prior License Agreement**

23. On December 12, 2007, FOCUS ELECTRICS, LLC, a predecessor of Legacy, and Regal entered into a trademark license agreement which included the WEST BEND Marks. A true and correct copy of the December 12, 2007 trademark license agreement (hereinafter the '07 License Agreement) is attached hereto as **Exhibit 8**.

24. On or about March 3, 2017, Greenfield World Trade, Inc., a predecessor company to Legacy, acquired FOCUS ELECTRICS, LLC, an Illinois limited liability company. This acquisition by Greenfield World Trade, Inc. included the acquisition of the '07 License Agreement which confirms that it "shall be binding upon, and shall inure to the benefit of, the successors, representatives and permitted assigns of each of the respective parties." *See* **Exhibit 8**, section 6.4.

25. On or about June of 2025, Greenfield World Trade, Inc. was acquired by Legacy. This acquisition by Legacy likewise included the acquisition of the '07 License Agreement.

26. The '07 License Agreement granted to Regal "an exclusive transferable, renewable, worldwide license, subject to termination as provided herein, to use the [WEST END Marks] in sole conjunction with the marketing, advertising, distribution and sale of Covered Products by, into or through Retail and Direct Sales Channels." *See* **Exhibit 8** at pg. 1, section 1.1.

27. The'07 License Agreement expressly states that the "Covered Products" means "oil core, water purification, water distillation, and water filtration products and all cookware, sold in the retail and direct sales channels". *See* **Exhibit 8** at pg. 12, s*ee also* **Exhibit 2**.

28. The parties acknowledged and agreed in the '07 License Agreement that sales by Regal of any products using the licensed trademarks in all other channels of trade for all other products are expressly prohibited. *See* **Exhibit 8** at pg. 2, section 1.1 and 1.2.

29. The parties acknowledged and agreed in the '07 License Agreement that:

> Licensor is the owner of all right, title and interest in and to the [WEST BEND Marks] and is also the owner of the goodwill attached or which shall become attached to the [WEST BEND Marks]…Neither Licensee nor Licensor shall take any action to interfere with or dilute the value or goodwill of the [WEST BEND Marks]… At no time, either while this Agreement is in effect or thereafter, shall Licensee claim any ownership in the [WEST BEND Marks] or the goodwill associated therewith except the right to use in accordance with this Agreement.

*See* **Exhibit 8** at pg. 3, section 2.1

30. The parties acknowledged and agreed in the '07 License Agreement that both parties "shall exercise their best efforts to protect the valuable reputation and goodwill represented by the [WEST BEND Marks]." *See* **Exhibit 8** at pg. 3, section 2.2.

31. The parties acknowledged and agreed in the '07 License Agreement that if either party materially breaches this '07 License Agreement, or is in material default, the non-breaching party may terminate the '07 License Agreement, after notice and a chance to cure the breach is given to the non-breaching party. *See* **Exhibit 8** at pg. 6, section 5.2.

32. On or about September 25, 2025, Regal materially breached the '07 License Agreement, when Regal surreptitiously filed a trademark application claiming ownership of the Regal Application with the USPTO for the WEST BEND trademark (the "Regal Application") without informing Legacy or its predecessor about this new application. A true and correct copy of the Regal Application including a non-final Office Action and an express abandonment is attached hereto as **Exhibit 9**.

33. The Regal Application was for the WEST BEND trademark for goods in Class 21 including:

> Cookware, namely, pots and pans; Bakeware, wooden cooking spoons, kitchen ladles, serving tongs, scraping spatulas being household utensils, serving spatulas for kitchen use, hand-operated salt and pepper mills, cooking strainers, whisks, cutting boards; kitchen accessories and kitchen hand tools, namely, spatulas, kitchen tongs being household utensils; barbecuing and grilling tools and utensils, namely, spatulas, kitchen tongs being household utensils, scrapers for household purposes and cleaning brushes for barbecue grills.

*See* **Exhibit 9** at pg. 2.

34. The Regal Application was filed as an in-use trademark application and alleges that the trademark was first used anywhere by Regal in association with the listed goods at least as early as August of 2025 and was first used in commerce by Regal at least as early as August of 2025. *See* **Exhibit 9** at pg. 2.

35. The Regal Application included a trademark specimen for WEST BEND cookware that indicates use by Regal, which clearly infringes on Legacy's rights to the WEST BEND Marks. Of note, the trademark specimen uses WEST BEND® COOKWARE with the ® indicating a trademark registration, but Regal does not have a valid and existing USPTO trademark registration in the WEST BEND trademark. Regal is brazenly using Legacy's WEST BEND Marks in violation of Legacy's well-established rights to this trademark and did not have permission and/or authority to use Legacy's WEST BEND Marks for the surreptitious Regal Application. A true and correct copy of the specimen filed with the Regal Application is attached hereto as **Exhibit 10**.

36. Beyond covering a mark that is identical and confusingly similar to Legacy's WEST BEND Marks, the Regal Application also covers goods that overlap with or are closely related to those offered by Legacy for use in cookware and kitchen solutions under the WEST BEND trademark thereby likely to cause consumer confusion and eroding the rights and goodwill that Legacy has in the WEST BEND Marks.

37. The act of filing of the Regal Application undoubtedly “interfere[d] with or dilute[d] the value or goodwill of the [WEST BEND Marks]” as prohibited in the ’07 License Agreement. *See* **Exhibit 8** pg. 3 section 2.1. This prohibited interference in the WEST BEND Marks is a material breach of the agreement.

38. Moreover, the Regal Application is an intentional attempt to claim ownership in the WEST BEND Marks, which is prohibited by the ’07 License Agreement. *See* **Exhibit 8** at pg. 2 section 2.1. The filing of the Regal Application by Regal confirms that Regal terminated the ’07 License Agreement as this conduct was an express violation of the plain language and spirit of the ’07 License Agreement. *See* **Exhibit 8**, pgs. 2-3 sections 1.1, 1.2, 2.1 and 2.2.

39. Further, the Regal Application deceptively undermines the value and goodwill of the WEST BEND Marks as Regal claims the WEST BEND Marks as their own and the use of these marks to the benefit of Regal. This usage and the Regal Application infringe on Legacy’s rights to the WEST BEND Marks in material breach of both the letter and the spirit of the ’07 License Agreement. *See* **Exhibit 2**; **Exhibit 8**, pgs. 2-3 sections 1.1, 1.2, 2.1 and 2.2.

40. The ’07 License Agreement was terminated by Regal’s material breach at least as early as the filing date of the Regal Application, September 25, 2025. *See* **Exhibits 8** and **9**. Thereafter, following the termination of the ’07 License Agreement, all uses of the WEST BEND Marks by Regal were not permitted under the ’07 License Agreement, not authorized by Legacy, and were and are infringing on Legacy’s intellectual property rights in the WEST BEND Marks. *See* **Exhibit 8**; *see also* **Exhibit 9**.

41. Regal has no right to cure this material breach because the breach is incapable of being cured. Regal’s own conduct in filing the Regal Application was an acknowledgement that the ’07 License Agreement had terminated as this conduct was against the plain language and spirit

of the ’07 License Agreement. *See* **Exhibit 8.** Regal’s conduct has damaged and continues to damage the goodwill and reputation of Legacy’s intellectual property rights in the WEST BEND Marks and this damage cannot be undone or cured.

42. Moreover, Regal has no right to cure this material breach because the breach destroys the essential benefit of the bargain and of the relationship between the parties delineated in the ’07 License Agreement. The ’07 License Agreement confirms that “neither [party] shall take any action to interfere with or dilute the value or goodwill of the licensed trademarks.” Exhibit 8, pg. 3 section 2.1. Regal’s improper actions are analogous to a false warranty that induced the creation of the ‘07 License Agreement. The breach does not merely violate a contractual obligation; it destroys the fundamental premise upon which the parties entered the agreement. Because the breach deprives the non-breaching party of the essential benefit of its bargain and irreparably undermines the trust underlying the contractual relationship, this material breach cannot be cured and terminates the ’07 License Agreement.

**Defendant’s Continued Infringing Conduct**

43. When the Regal Application was unscrupulously filed with the USPTO, Regal failed to notify Legacy about this filing. Regal’s conduct continued without Legacy’s knowledge or consent, in violation of the ’07 License Agreement.

44. After the termination of the ’07 License Agreement, on or about February 3, 2026, without communicating with Legacy, Regal announced its reinvigoration of the WEST BEND brand through press releases, advertisements, and newsletters. A true and correct copy of screenshots of Regal’s continued infringing uses is attached hereto as **Exhibit 11**.

45. Shortly thereafter, in March of 2026, again after the termination of the ’07 License Agreement, Regal used at least one of the WEST BEND Marks at a tradeshow in violation of Legacy’s rights in the WEST BEND Marks. *See* **Exhibit 12**.

46. Regal's use of at least one of the WEST BEND Marks at the trade show was especially troublesome as this use was directed to Legacy's customers to advertise products associated with Legacy's well-established and well-recognized WEST BEND brand. *See* **Exhibit 12**.

47. Regal never notified Legacy about the filing of the Regal Application, the reinvigoration of the WEST BEND brand, and the use of the WEST BEND brand at the trade show. Legacy first became aware of the infringing use by Regal around March of 2026 which has now resulted in the instant litigation.

**Notice and Defendant's Refusal to Cease**

48. Legacy has communicated with Regal about this infringing conduct and Regal refuses to cease using the WEST BEND Marks.

49. Upon information and belief, Regal continues to use the infringing WEST BEND Marks with full knowledge of Legacy's superior rights and ownership in the intellectual property.

50. Regal's continued use of the infringing marks after receiving notice of Legacy's rights constitutes willful infringement under the Lanham Act.

**Irreparable Harm**

51. Regal's unauthorized use of Legacy's WEST BEND Marks has caused and continues to cause irreparable harm to Legacy, including but not limited to: consumer confusion regarding the source of products; consumer confusion regarding the WEST BEND Marks' usage in marketing and promotional materials; dilution of the distinctive character of Legacy's WEST BEND Marks; tarnishing of Legacy's reputation; loss of control over its trademarks and associated goodwill; and loss of potential customers and business opportunities.

52. Such harm cannot be adequately compensated by monetary damages alone and warrants injunctive relief.

## CLAIMS FOR RELIEF

### COUNT I
### FEDERAL TRADEMARK INFRINGEMENT
***(Lanham Act, 15 U.S.C. § 1114)***

53. Legacy repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1-52 as though fully set forth herein.

54. Legacy owns the U.S. trademark registrations for the WEST BEND Marks listed in Exhibit 1 in connection with the sale and marketing of kitchenware and cookware goods for the WEST BEND brand.

55. For decades, Legacy and its predecessor companies have continuously used the WEST BEND Marks to identify its goods and services and to distinguish them from those sold by others, by, among other things, prominently displaying the WEST BEND Marks on the Legacy website and on advertising and promotional materials such as its website, the WEST BEND online store, and on its social media pages.

56. Pursuant to 15 U.S.C. § 1072, at all relevant times herein, Regal had constructive notice of Legacy's nationwide ownership rights in the WEST BEND Marks through their federal registrations with the USPTO and public display on both the Principal Register and the Supplemental Register.

57. Legacy's WEST BEND Marks have obtained secondary meaning through decades of use in the consumer marketplace. The consuming public recognizes the WEST BEND Marks and associates them with Legacy and the high quality of its goods and services.

58. Legacy has invested substantial time, effort, and financial resources in establishing and maintaining substantial recognition and goodwill in the WEST BEND Marks. The WEST

BEND Marks and the goodwill associated therewith have become one of Legacy's most valuable assets.

59. The WEST BEND Marks are inherently distinctive as applied to Legacy's kitchenware and cookware goods, serving as a source-identifier for Legacy's goods and services.

60. Regal is engaged in the promotion and sale of goods and services substantially similar to or identical to those associated with Legacy's WEST BEND Marks, including the sale and promotion of WEST BEND branded kitchenware and cookware and offering substantially similar goods or the same goods for custom white label cookware manufacturing in the United States. *See* **Exhibit 11**.

61. Regal uses Legacy's WEST BEND Marks to identify its goods and services by, among other things, prominently displaying the WEST BEND Marks on Regal's website, maintaining the WEST BEND brand website where WEST BEND products may be purchased and on advertising and promotional content across their social media pages. Regal's promotion and sale of goods and services differing materially from authorized goods and services sold under the WEST BEND Marks by Legacy is likely to and/or has caused confusion, deception, and mistake by creating the false and misleading impression that those goods are materially identical to their authorized counterparts. *See* **Exhibit 2** and **Exhibit 11**.

62. Upon information and belief, Regal intends to engage further in the promotion and sale of kitchenware and cookware using Legacy's WEST BEND Marks. *See* **Exhibit 11**.

63. In its promotion and sale of the aforementioned goods and services, Regal uses an infringing mark, "WEST BEND" and associated "WEST BEND" logos that are nearly identical, if not *the same* WEST BEND Marks. Furthermore, like the goods and services sold under Legacy's Marks, Regal's goods and services are marketed to similar customers using similar channels of

trade and advertisement, including trade shows, the Internet and social media accounts such as Instagram, Facebook, and TikTok. *See* **Exhibit 2**.

64. Legacy is not affiliated or associated with the goods and services sold or advertised by Regal under any infringing mark. Indeed, Regal surreptitiously submitted a trademark application for an identical WEST BEND mark. *See* **Exhibit 8**.

65. Regal's Application is substantially similar, if not identical, to Legacy's Marks in its visual appearance and represents goods and services substantially similar to those offered by Legacy using its Marks. Regal's use of the mark in the Regal Application is likely to cause confusion, mistake or deception among purchasers as to the source of Regal's goods and services.

66. Notably, the USPTO indicated to Regal in an Office Action that there was a substantial likelihood that their Regal Application would cause consumer confusion in view of Legacy's WEST BEND Marks if it were granted. *See* **Exhibit 9** pg. 8-23.

67. Regal's use of the WEST BEND Marks violates Section 32 of the federal Lanham Act, 15 U.S.C. § 1114, and Regal's activities have caused and, unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Legacy's goodwill and reputation as symbolized by the WEST BEND Marks, for which Legacy has no adequate remedy at law.

68. Regal's actions demonstrate an intentional, willful intent to trade on the goodwill associated with Legacy's WEST BEND Marks, to Legacy's great and irreparable injury.

69. Regal has caused, and is likely to continue causing, substantial injury to the public and to Legacy, and Legacy is entitled to injunctive relief and to recover Regal's profits, as well as Legacy's actual damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**COUNT II**
**FEDERAL TRADEMARK COUNTERFEITING**
***(Lanham Act, 15 U.S.C. § 1114)***

70. Legacy repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1-69 as though fully set forth herein.

71. Regal is using trademarks and/or designations that are identical to, or substantially indistinguishable from, Legacy's WEST BEND Marks on goods covered by registrations for Legacy's WEST BEND Marks.

72. Regal is intentionally and willfully using trademarks and/or designations knowing they are counterfeit in connection with the advertising, sale, and offering for sale and distribution of counterfeit goods for its own personal financial gain and such intentional and willful conduct by the Regal makes this an exceptional case.

73. Regal's use of Legacy's WEST BEND Marks to advertise, offer for sale, sell, manufacture, and distribute Regal's counterfeit products is without the consent of Legacy and has been since at least as early as September 25, 2025.

74. Regal's unauthorized use of Legacy's WEST BEND Marks on and in connection with the advertising and sale of counterfeit goods constitutes Regal's use of Legacy's WEST BEND Marks in commerce.

75. Regal's unauthorized use of Legacy's WEST BEND Marks as set forth above is likely to:

a. Cause consumer confusion, mistake, and deception;

b. Cause consumers to believe that Regal's counterfeit kitchenware and cookware are the same as Legacy's kitchenware and cookware, and/or believe that Regal is authorized, sponsored, or approved by Legacy, and/or

cause consumers to believe that Regal is affiliated, connected, or associated with or in some way related to Legacy; and

c. Result in Regal unfairly benefiting from Legacy's advertising and promotion, and profiting from the reputation of Legacy and Legacy's WEST BEND Marks.

76. As a result, Regal's unauthorized use of Legacy's WEST BEND Marks is likely to cause substantial and irreparable injury to the public, Legacy, and Legacy's WEST BEND Marks, including the substantial goodwill represented thereby.

77. Upon information and belief, Regal has made and will continue to make substantial profits or gains to which they are not entitled in law or equity.

78. Regal's acts as set forth herein constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

79. Regal's acts as set forth herein further constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. Such conduct entitles Legacy to injunctive relief, compensatory damages, treble damages, disgorgement of profits, and costs and attorney's fees or, at Legacy's election, statutory damages up to $2,000,000 per counterfeit mark per type of goods advised, sold, manufactured, and/or offered for sale, under 15 U.S.C. § 1117(c)(2).

## COUNT III
## FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
***(Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))***

80. Legacy repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1-79 as though fully set forth herein.

81. Regal is using Legacy's WEST BEND Marks in connection with unlicensed and unauthorized goods that differ in material respects from the goods' authorized counterparts. This conduct is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Regal's unlicensed and unauthorized goods are associated or connected with Legacy, or have the sponsorship, endorsement, or approval of Legacy.

82. Regal therefore has used confusingly similar imitations of Legacy's WEST BEND Marks, and Regal's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Legacy's goodwill and reputation as symbolized by Legacy's WEST BEND Marks, for which Legacy has no adequate remedy at law.

83. Regal's actions in filing for the Regal Application for a nearly identical mark demonstrate intentional conduct and willful intent to trade on the goodwill associated with Legacy's WEST BEND Marks to Legacy's great and irreparable injury.

84. Regal has caused and is likely to continue causing substantial injury to the public and to Legacy, and Legacy is entitled to an accounting of Regal's profits, as well as to injunctive relief, its actual damages, its costs, and its reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**COUNT IV**
**FEDERAL TRADEMARK DILUTION**
**(15 U.S.C. § 1125(c))**

85. Legacy repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1-84 as though fully set forth herein.

86. Legacy's WEST BEND Marks are famous, having achieved widespread recognition among the general consuming public of the United States as a designation of source for Legacy's kitchenware products and services. *See* **Exhibits 1, 3** and **6**

87. Regal's use of the WEST BEND Marks commenced after Legacy's marks became famous.

88. Regal's use of the WEST BEND Marks is likely to cause dilution by blurring or tarnishing the distinctive quality of Legacy's famous WEST BEND Mark.

89. Regal's dilution has been willful, entitling Legacy to enhanced remedies. In addition, Regal's conduct has caused irreparable damage and injury to Legacy and will continue to cause irreparable injury to Legacy unless Regal is enjoined from further infringing upon Legacy's registered trademark.

**COUNT V**
**COMMON LAW TRADEMARK INFRINGEMENT**

90. Legacy repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1-89 as though fully set forth herein.

91. Regal's wrongful conduct, as alleged herein, constitutes common law trademark infringement and unfair competition under Delaware law.

92. Legacy is without adequate remedy at law, as Regal's acts have caused and continue to cause Legacy irreparable harm to its business, reputation, goodwill, and stature in the kitchenware business community.

93. On information and belief, Legacy alleges that Regal committed the above alleged acts in conscious disregard of Legacy's rights, and Legacy is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of Delaware in an amount sufficient to punish, deter, and make an example of Regal.

94. The manufacture, distribution, and sale of the unauthorized and infringing products by Regal is without any permission, license, or other authorization from Legacy or is in breach of any permission, license, or other authorization from Legacy, if it exists. The said unauthorized products are being distributed and sold in interstate commerce.

95. Legacy has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Regal in an amount thus far not determined or ascertainable. At a minimum, however, Legacy is entitled to injunctive relief, to an accounting of profits, to Legacy's damages, and to Legacy's costs.

**COUNT VI**
**COMMON LAW UNFAIR COMPETITION**

96. Legacy repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1-95 as though fully set forth herein.

97. Regal's wrongful conduct, as alleged herein, constitutes common law unfair competition under Delaware law.

98. Legacy is without adequate remedy at law, as Regal's acts have caused and continue to cause Legacy irreparable harm to its business, reputation, goodwill, and stature in the kitchenware business community.

99. On information and belief, Legacy alleges that Regal committed the above alleged acts in conscious disregard of Legacy's rights, and Legacy is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of Delaware in an amount sufficient to punish, deter, and make an example of Regal.

100. The manufacture, distribution, and sale of the unauthorized and infringing products by Regal is without any permission, license, or other authorization from Legacy or is in breach of

any permission, license, or other authorization from Legacy, if it exists. The said unauthorized products are being distributed and sold in interstate commerce.

101. Legacy has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Regal in an amount thus far not determined or ascertainable. At a minimum, however, Legacy is entitled to injunctive relief, to an accounting of Regal's profits, to Legacy's damages, and to Legacy's costs.

**COUNT VII**
**BREACH OF CONTRACT**

102. Legacy repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1-101 as though fully set forth herein.

103. Legacy maintains that the '07 License Agreement terminated on or about September 26, 2025 pursuant to the express terms and Defendant's material misconduct in filing the Regal Application. Following termination, Regal lacked any contractual rights under the Agreement.

104. Alternatively, and only to the extent that it is determined that the '07 License Agreement did not terminate, Legacy pleads this Count in the alternative under Fed. R. Civ. P. 8(d).

105. On or about December 12, 2007, Plaintiff and Defendant entered into a valid and enforceable written '07 License Agreement. The '07 License Agreement provides that Wisconsin law applies.

106. Pursuant to the Agreement, Legacy agreed to license certain intellectual property to Regal.

107. Pursuant to the Agreement, Regal agreed to abide by the terms of the '07 License Agreement.

108. Legacy fully performed all material obligations required under the Agreement, or its performance was excused.

109. Regal breached this Agreement by, among other things filing the Regal Application, claiming ownership of the Regal Application, and using the mark in the Regal Application.

110. The act of filing of the Regal Application undoubtedly "interfere[d] with or dilute[d] the value or goodwill of the [WEST BEND Marks]." **Exhibit 8** pg. 3 section 2.1.

111. Moreover, the Regal Application is an intentional attempt to claim ownership in the WEST BEND Marks which is prohibited by the '07 License Agreement. **Exhibit 8** pg. 3 section 2.1. The filing of the Regal Application by Regal confirms that Regal terminated the '07 License Agreement as this conduct was expressly in violation of the plain language and spirit of the '07 License Agreement. **Exhibit 8** pgs. 2-3 sections 1.1, 1.2, 2.1 and 2.2.

112. Regal further breached the Agreement by, among other things, failing to "exercise their best efforts to protect the valuable reputation and goodwill represented by the [WEST BEND Marks]." **Exhibit 8** pg. 2 section 2.2.

113. Regal's breach was material and has deprived Legacy of the benefit of its bargain.

114. As a direct and proximate result of Regal's material breach, Legacy has suffered damages in an amount to be proven at trial, but exceeding the jurisdictional minimum of this Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant, and grant the following relief:

A. A preliminary and permanent injunction restraining and enjoining Defendant, its officers, agents, servants, employees, attorneys, successor and assigns, and those persons in active concert or participation with Defendant, from:

1. Using the mark "WEST BEND" or any other mark incorporating Plaintiff's WEST BEND mark or any similar variation thereof;
2. Using any trademark, service mark, trade name, or other designation that is confusingly similar to Plaintiff's WEST BEND mark;
3. Engaging in any activity that constitutes trademark infringement, unfair competition, or dilution of Plaintiff's WEST BEND mark;
4. Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (1) through (3)

B. An accounting and disgorgement of all profits, gains, and advantages realized by Defendant from its infringing activities;

C. An award of Plaintiff's actual damages pursuant to 15 U.S.C. § 1117(b) in an amount up to three times the actual damages, based on Defendant's willful infringement;

D. An award of Defendant's profits;

E. Enhanced damages pursuant to 15 U.S.C. § 1117(b) in an amount up to three times the actual damages, based on Defendant's willful infringement;

F. An award of exemplary and punitive damages to deter any further willful infringement as the Court deems appropriate;

G. An award of Plaintiff's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and applicable Delaware Law, as this is an exceptional case;

H. An award of Plaintiff's costs, expenses, and reasonable attorneys' fees incurred in prosecuting this action under all applicable statutes, rules, and common law as may apply;

I. An order directing Defendant to deliver up for destruction all materials in its possession or control that bear the "WEST BEND" mark or any confusingly similar designation, including but not limited to signs, advertising materials, promotional items, stationary, social media, and digital assets pursuant to 15 U.S.C. § 1118;

J. An order requiring Defendant to file within thirty (30) days after entry of judgment a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunctive relief ordered pursuant to 15 U.S.C. § 1116(a);

K. Pre-judgment and post-judgment interest on all monetary awards; and

L. Such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

In accordance with Rule 38 of the Federal Rules of Civil Procedures and D. Del. LR 38.1, Plaintiff hereby demands a trial by jury on all issues so triable.

Elissa A. Tisdahl, Esq.
Florida Bar No. 85521
etisdahl@weisbergiplaw.com
Jeffrey Kamenetsky, Esq.
Florida Bar No. 114571
Jkamenetsky@weisbergiplaw.com
WEISBERG IP LAW
1232 N. University Drive
Plantation, FL 33322
(954) 828-1488 (Telephone)
(954) 828-9122 (Facsimile)

September 4, 2026

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
dmackrides@ycst.com

*Counsel for Plaintiff*